IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BRYANT EUGENE MCCALL, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. JRR-21-1980 |
| WARDEN CAMPBELL, et al., | * | |
| Respondents. | * | |

\*\*\*

## MEMORANDUM OPINION

Petitioner Bryant Eugene McCall filed a Petition For Writ of Habeas Corpus. ECF No. 1 (the "Petition"). Respondents are Warden Campbell and the Maryland Attorney General. Respondents originally filed a Limited Answer, arguing that the Petition was time-barred. ECF No. 12. The Court found the Petition timely and on November 20, 2023, issued an Order directing Respondents to file a Supplemental Answer. ECF No. 17. Respondents filed a Supplemental Answer, which asserts that the sole claim for relief is procedurally defaulted and, alternatively, that it lacks merit. ECF No. 18. No hearing is required. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2021); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons that follow, the Petition shall be denied and a certificate of appealability shall not issue.

I.  BACKGROUND

On December 20, 2012, Mr. McCall was indicted in the Circuit Court for Montgomery County on two counts of armed robbery, two counts of conspiracy to commit armed robbery, three counts of first-degree assault, and one count of use of a handgun in a crime of violence. ECF No.

18-1 at 18-21. On August 21, 2013, the State submitted its witness list to the defense. *Id.* at 22-25. The list did not include Manuel Santos or Sergeant Ronald Merrit. September 16 through 18, 2013, Mr. McCall was tried by a jury and convicted. ECF Nos. 18-7, 18-8, 18-9. Mr. McCall filed a motion for a new trial, arguing that the trial court erred in permitting the State to call Santos and Sergeant Merrit as witnesses when they had not been identified before trial. ECF No. 18-1 at 26-29. The motion was denied, and Mr. McCall was sentenced to an aggregate 30 years' imprisonment. *Id.* at 30-32.

Mr. McCall filed a direct appeal to the Appellate Court of Maryland asserting three errors. *Id.* at 50-105. His second assignment of error repeated the arguments made in his motion for a new trial. *Id.* at 51, 69-72. The Appellate Court of Maryland issued an opinion on April 9, 2015, affirming the convictions and sentence. *Id.* at 145-66. The opinion described the facts as follows:

> At approximately 10:00 p.m. on November 2, 2012, two African-American men entered the White Oak Convenience Store at 11407 Lockwood Drive in Silver Spring. The first man was approximately six feet tall, wore a black jacket and red gloves, and carried a gun. As soon as he came into the store, the man told the cashiers "don't move" and "I just need the money. Just give me all the money." The man then went behind the counter and took close to $500 from the cash register and lottery machine. While behind the counter, the man pointed his gun directly at two store employees and directed them not to move. The second man was around 5'7" and wore a white hoodie with a black North Face vest over it and a red scarf covering his face. He stayed closed to the door as a look-out and instructed the customers not to move. After the taller man took the money, the two men left the store together.
>
> A week later, at around 1:30 a.m. in the morning on November 10, 2012, two African-American men broke into the European Market grocery store located at 17605 Redland Road in Derwood. The taller man of the two wore a black jacket and red gloves, and the other man wore a white hoodie with a long-sleeve black jacket over it. Soon afterwards, Sergeant Ronald Merrit of the Rockville City Police, who was on patrol in a marked police vehicle, was notified that a burglary had taken place. Sergeant Merrit observed a light-colored sedan he believed might have been involved in the burglary and activated his emergency equipment to signal the vehicle to stop. In response, the vehicle "immediately began to accelerate at a high rate of speed," then "continued to increase speed at a very, very high rate" until Sergeant Merrit lost sight of it.

Shortly thereafter, the vehicle Sergeant Merrit had been chasing crashed into a pole on the 1400 block of Rockville Pike. Two men exited the vehicle and ran behind a nearby shopping center: one man was around six feet tall and wore a black North Face jacket, black pants, and red gloves, and another was about 5'7" and had dreadlocks. The shorter man went over a fence, but, in the process, dropped some jewelry and a hole punch on the ground. The taller man "tucked between the wall and the fence."

Officer Brad Schmidt of the Montgomery County Police responded to the crash scene. With the assistance of a police dog, Officer Schmidt was able to locate the taller man and take him into custody; he was identified later as Yasin Rasheed. At the time of his arrest, Mr. Rasheed was wearing a black North Face rain jacket, red and black gloves, and black North Face rain pants. Officer Schmidt continued to look for the second suspect and discovered a handgun that had "been dropped over [the] fence." Officer Schmidt also recovered a glove, and a forensic analysis of the glove revealed Mr. McCall's DNA on it.

Police then searched the crashed vehicle and recovered an earnings statement with Mr. McCall's name on it, mail with Mr. McCall's name on it, a wallet with Mr. McCall's identification in it, and a black North Face vest from the trunk. After running the vehicle's VIN number, the police discovered that Mr. McCall owned it. The keys to the vehicle were found in the ignition and the vehicle was not reported stolen.

The similarities between the November 2 and November 10 robberies led police to suspect that the same individuals might be responsible for both, and on December 20, 2012, Mr. McCall was charged in connection with the November 2, 2012 robbery. Before trial, Mr. McCall moved to exclude the introduction of evidence related to his alleged involvement in the November 10 robbery on the grounds that it was inadmissible as "other bad acts" evidence. The State opposed the motion, asserting that because the same men appeared to have been responsible for both incidents, evidence of Mr. McCall's involvement with the November 10 robbery established his identity as a participant in the November 2, 2012 robbery. Relying on *State v. Faulkner*, 314 Md. 630 (1989), the circuit court denied Mr. McCall's motion and permitted the State to introduce the evidence "for the limited purpose[] of establishing identity."

Mr. McCall's case was tried before a jury from September 16, 2013 to September 18, 2013. At the conclusion of the trial, the jury convicted Mr. McCall of two counts of robbery with a dangerous weapon, two counts of first-degree assault, one count of second-degree assault, two counts of conspiracy to commit robbery with a dangerous weapon, and one count of use of a handgun to commit a felony or crime of violence. At sentencing, the circuit court merged the two conspiracy convictions and the two first degree assault convictions with the two armed robbery convictions.

3

*Id.* at 146-49.

The record includes a letter from Mr. McCall to the Supreme Court of Maryland, dated June 17, 2015, indicating that he had trouble with mailing his petition for certiorari. *Id.* at 168. The Supreme Court of Maryland dismissed Mr. McCall's petition for certiorari on "grounds of lateness" (*id.* at 250) and subsequently denied his motion for reconsideration when he argued that he was on lockdown and the prison staff failed to timely mail his petition. *Id.* at 255-56, 257.

Mr. McCall filed a petition for postconviction relief on November 14, 2016, which he subsequently voluntarily withdrew. *Id.* at 258-65, 304-306, 316. He refiled the petition on January 19, 2018, asserting allegations of ineffective assistance of counsel. *Id.* at 317-25. After a hearing (ECF 18-14), the postconviction court denied the petition in an opinion issued January 14, 2021. ECF No. 18-1 at 366-75. The Appellate Court of Maryland denied Mr. McCall's application for leave to appeal on June 30, 2021. *Id.* at 401-403.

Mr. McCall filed his federal habeas petition on September 5, 2021. ECF No. 1. He asserts a single claim that the trial court violated his Fifth and Fourteenth Amendment rights when it permitted Santos and Sergeant Merrit, who were not disclosed, to testify.

## II.     PROCEDURAL DEFAULT

Procedural default occurs when a petitioner failed to present his claim to the highest state court with jurisdiction to hear it, and the state courts would now find that the petitioner cannot assert that claim. *Mickens v. Taylor*, 240 F.3d 348, 356 (4th Cir. 2001); *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999); *see also Gray v. Zook*, 806 F.3d 783, 798 (4th Cir. 2015) ("When a petitioner fails to comply with state procedural rules and a state court

dismisses a claim on those grounds, the claim is procedurally defaulted."). As the United States Court of Appeals for the Fourth Circuit has explained, "if a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard*, 134 F.3d at 619 (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)).

For a person convicted of a criminal offense in Maryland, exhaustion may be accomplished either on direct appeal or in postconviction proceedings. To exhaust a claim on direct appeal in a non-capital case, a defendant must assert the claim in an appeal to the Appellate Court of Maryland and then to the Supreme Court of Maryland by way of a petition for a writ of certiorari. *See* MD. CODE ANN., CTS. & JUD. PROC. §§ 12-201, 12-301. To exhaust a claim through postconviction proceedings, a defendant must assert the claim in a petition filed in the Circuit Court in which the inmate was convicted within 10 years of the date of sentencing. *See* MD. CODE ANN., CRIM. PROC. §§ 7-101–7-103. After a decision on a postconviction petition, further review is available through an application for leave to appeal filed with the Appellate Court of Maryland. *Id.* § 7-109. If the Appellate Court of Maryland denies the application, no further review is available, and the claim is exhausted. MD. CODE ANN., CTS. & JUD. PROC. § 12-202.

A procedural default occurs when a habeas petitioner fails to exhaust such available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1). Maryland law does not permit a second and successive state petition for postconviction relief. MD. CODE ANN., CRIM. PROC. § 7-103(a).

Respondents contend that Mr. McCall's sole claim is procedurally defaulted because, although he raised it on direct appeal, his petition for certiorari was dismissed by the Supreme Court of Maryland as untimely. ECF No. 18 at 33-38. The Court agrees. The Supreme Court of Maryland expressly relied on a state procedural rule when it dismissed Mr. McCall's petition for certiorari, and thus his sole claim for relief is procedurally defaulted pursuant to the independent and adequate state ground doctrine.

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits; or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, specifically, the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard,* 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488). To demonstrate prejudice, the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see Murray*, 477 U.S. at 494. Under the second exception, a petitioner may obtain review of procedurally defaulted claims if the case "falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). Such cases are generally limited to those in which the petitioner can show "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.

After two extensions of time, Mr. McCall has failed to provide the Court with any excuse for the procedural default.[1]  ECF No. 19, 20, 23, 24, 25.  Regardless of the procedural default, as explained below, Mr. McCall's sole claim for relief lacks merit.

### III.  STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005).  The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 572 U.S.415, 419-20 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement")).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law"; or (2)

---

[1] In the Court's Order granting his second extension of time, Mr. McCall was warned that another extension would not be granted.  ECF No. 25.  In all, Mr. McCall had from February 28, 2024, until the date of this Memorandum to provide the Court with an excuse for his procedural default, but he failed to respond.

"confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis per § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have

"resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. at 379.

**IV.   ANALYSIS**

As discussed above, Mr. McCall's sole claim for relief is procedurally defaulted. Even if it had been properly raised before the state courts, the claim would be dismissed for lack of merit. Mr. McCall contends that his constitutional rights were violated because the trial court permitted two witnesses to testify that were not disclosed to the defense prior to trial. ECF No. 1 at 6-9. Respondents argue that the claim is non-cognizable in federal habeas corpus review and lacks merit. ECF No. 18 at 30-33, 42-44.

On the second day of trial, the state called two witnesses that it conceded had not been disclosed on its witness list: Manuel Santos and Sergeant Ronald Merrit; the defense objected. ECF No. 18-8 at 127-148, 203-224. The trial court overruled the objection on the grounds that the relevant discovery rule, Maryland Rule 4-638, is discretionary; and the trial court determined that the defense had not been prejudiced. *Id.* at 128, 143-45, 196-98. Specifically, the trial court found that the defense had been in possession of the surveillance tape that Santos intended to authenticate and had the substance of Sergeant Merrit's testimony, because the defense had his arrest report. *Id.* at 128, 145. Further, the trial court called a break to permit the defense time to interview Sergeant Merrit and prepare for cross-examination. *Id.* at 143-44.

Manuel Santos testified that he owned the European Market that was broken into on November 10, 2012. *Id.* at 129-30. Santos testified that the store had four surveillance cameras and that he downloaded the video of the break-in for the police. *Id.* at 132. Santos then identified and authenticated the video and it was played for the jury. *Id.* at 137-38.

Sergeant Ronald Merrit testified that he was working on November 10, 2012, and observed what he believed was the vehicle involved in the break-in at the European Market. *Id.* at 204. Sergeant Merrit attempted to stop the vehicle, but it accelerated at a high rate of speed. *Id.* at 207. Sergeant Merrit testified that he lost sight of the vehicle and it ultimately crashed. *Id.* He arrived on the scene of the crash, followed by a K-9 officer, who located a suspect named Yasmin Rashad hiding in a crevice near some dumpsters. *Id.* at 208-12. Sergeant Merrit also testified that he determined that the vehicle involved in the crash was registered to Mr. McCall. *Id.* at 213-14.

As mentioned above, Mr. McCall raised this claim as an assignment of error in his direct appeal. The Appellate Court of Maryland confined its analysis to discussion of Maryland Rule 4-638 – ostensibly because Mr. McCall's assignment of error was limited to argument regarding violation of the state discovery rule. ECF No. 18-1 at 120-24, 157-60. The Appellate Court of Maryland concluded that the trial court did not abuse its discretion in permitting the two witnesses to testify because the rule does not require automatic exclusion of evidence on a violation of the rule, and permits the judge to fashion an appropriate remedy. *Id.* at 158-59. The Appellate Court of Maryland determined that the trial court's remedy was appropriate under the circumstances, because Mr. McCall's counsel was in possession of the video Santos authenticated and was given time to prepare for cross-examination of Sergeant Merrit. *Id.* at 159-60.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (citations omitted). In the arena of habeas corpus, federal courts are allowed to "intervene in the state judicial process only to correct wrongs of a constitutional dimension." *Wainwright v. Goode,* 464 U.S. 78, 83 (1983) (citation omitted). If a petitioner's

claims do not allege a constitutional violation, his claims will fail because they are non-cognizable in a federal habeas petition.  See *Ramdass v. Angelone*, 530 U.S. 156 (2000); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Weeks v. Angelone*, 176 F.3d 249, 262 (4th Cir. 1999); *Fisher v. Angelone*, 163 F.3d 835, 854 (4th Cir. 1998); *Huffington v. Nuth*, 140 F.3d 572, 584 (4th Cir. 1998).  Absent "circumstances impugning fundamental fairness or infringing specific constitutional protections," admissibility of evidence does not present a federal question.  *Grundler v. North Carolina,* 283 F.2d 798, 802 (4th Cir. 1960); *see Estelle,* 502 U.S. at 67-68.  Importantly, errors in interpretation of state evidentiary law do not give rise to a due process violation.  *See Estelle,* 502 U.S. at 72 ("The only question for us is 'whether the [alleged error] by itself so infected the entire trial that the resulting conviction violates due process.'") (quoting *Cupp v. Naughten,* 414 U.S. 141(1973)).

Mr. McCall argues that the trial court erred because it violated Maryland Rule 4-638.  ECF No. 1 at 6-10.  Mr. McCall's reference to the Due Process Clause in connection to the violation of Maryland Rule 4-638 does not give rise to a constitutional violation, and he fails to identify how the trial court's decision to permit the witnesses to testify infected his entire trial such that his conviction violates due process. Thus, even if Mr. McCall's claim for relief was not procedurally defaulted (and it is), it lacks merit because is not cognizable for federal habeas corpus review.  The Petition will, therefore, be dismissed.

V.      **CERTIFICATE OF APPEALABILITY**

When a district court dismisses a habeas petition solely on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Mr. McCall has not demonstrated that a certificate of appealability is

warranted, so the Court will not issue one. Mr. McCall, however, is entitled to request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

## VI.     CONCLUSION

For the foregoing reasons, the Court will deny Mr. McCall's Petition for Writ of Habeas Corpus and decline to issue a Certificate of Appealability. A separate Order follows.

July 15, 2024

/S/

Julie R. Rubin
United States District Judge